IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

GERALD S. LEPRE, Jr.,  : Bankruptcy No. 11-20288-JAD

Debtor,  : Chapter 7

─────────────────────────────── X

GERALD S. LEPRE, Jr.,

Plaintiff,

- vs -  : Adversary No. 11-02159JAD

DEPARTMENT OF EDUCATION,
EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
SALLIE MAE, INC.,

Defendants.

─────────────────────────────── X

## MEMORANDUM OPINION

The matter before the Court is an *Adversary Complaint* to determine dischargeability of student loan debt (the "Complaint") filed by Gerald S. Lepre, Jr. (the "Debtor"). This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A),(I) and (O), and 28 U.S.C. § 1334. This *Memorandum Opinion* constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons set forth below, judgment will be entered in favor of defendant, Educational Credit Management Corporation ("ECMC"), determining that the Debtor's student loan debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(8).

## I.

The Debtor filed for relief pursuant to Chapter 7 of Title 11 of the United States Code on January 19, 2011. (See Case No. 11-20288-JAD, Doc. #1). On March 14, 2011, the Debtor filed the instant adversary proceeding[1] against the United States Department of Education, the Pennsylvania Higher Education Assistance Agency d/b/a American Education Services (AES), PHEAA Student Loan Foundation, Inc., and Sallie Mae, Inc.[2] (See Adv. No. 11-02159-JAD, Doc. #1).[3]

The United States Department of Education filed an answer on March 28, 2011, consenting to the dischargeability of its *de minimis* due and owing student loan balance of $53.00. (See Doc. #11).

On April 13, 2011, the Pennsylvania Higher Education Assistance Agency d/b/a American Education Services (AES) (hereinafter "PHEAA"), filed an answer explaining that it was not a proper party defendant because any "right, title or interest" it formerly maintained in the Debtor's student loans was transferred to ECMC on March 28, 2011. (See Doc. #10, *Affirmative Defenses* ¶¶ 2-3). PHEAA's answer also explained that there is no such entity as "PHEAA Student Loan Foundation, Inc." (See id. at *Answer and Affirmative Defenses* ¶ 4).

---

[1] The Debtor demanded a jury trial in his Complaint. (See Adv. No. 11-02159-JAD, Doc. #1, ¶ 35). However, the Debtor is not entitled to a jury trial on issue of student loan dischargeability as a matter of law. See Republic Bank v. Fineberg (In re Fineberg), 170 B.R. 276, 280 (E.D. Pa. 1994) (citations omitted).

[2] The Debtor also filed a separate Adversary Proceeding against National Collegiate Trust at Adversary No. 11-02183-JAD. Ultimately, the parties agreed to a prospective discharge of the Debtor's $14,033.94 balance due and owing to National Collegiate Trust, upon the grant of a general discharge in the Debtor's main bankruptcy case. (See Adv. No. 11-02183-JAD, Doc. #41, ¶ 5).

[3] All future Docket entries refer to Adversary Proceeding 11-02159-JAD, unless otherwise specifically noted.

A *Motion to Substitute/Intervene by Educational Credit Management Corporation as Party Defendant* was filed on March 2, 2011, which identified ECMC as assignee of all student loan obligations sought to be discharged by the Debtor in the adversary proceeding.[4] (See Doc. #28). Following a hearing held June 28, 2011, this Court entered an Order substituting ECMC for PHEAA as the proper defendant.[5] (Doc. #42). Ultimately, the Complaint as to Sallie Mae, Inc. was also dismissed (see Doc. #133),[6] leaving ECMC as the sole defendant in the adversary.

The pre-trial and discovery process was contentious. This Court originally scheduled a trial on this matter for August 30, 2011, with discovery to close on July 29, 2011. (See Doc. #21). However, on August 8, 2011, ECMC filed a *Motion to Compel Response to Discovery and Continuance of Trial*, requesting that the Court continue the trial and extend discovery deadlines, citing alleged non-cooperation by the Debtor. (See Doc. #47). The Debtor responded by filing his own *Motion to Compel Discovery and/or Motion for Sanctions for Failure to Answer Discovery*, wherein the Debtor requested that this Court discharge all of the Debtor's outstanding student loans as a sanction for

---

[4] With the exception of the $53.00 balance owed to the U.S. Department of Education.

[5] The adversary proceeding was transferred from the Honorable Bernard Markovitz to this Court by an Order entered April 26, 2011. (Doc. #19).

[6] This Court dismissed the Debtor's Complaint as to Sallie Mae, Inc. finding it was undisputed that Sallie Mae, Inc. was not a creditor of the Debtor, and, therefore, no case or controversy existed between the Debtor and Sallie Mae, Inc. (See Audio Recording of Hearing Held in Courtroom D, November 8, 2011 (10:52 - 10:53 AM)). Dismissal of Sallie Mae, Inc. as a party defendant resolved the several motions filed by the Debtor and Sallie Mae, Inc. including: a *Motion for Default Judgment* (Doc. #12) and a *Request for Entry of Default Judgment* (Doc. #13) filed by the Debtor against Sallie Mae, Inc., as well as *Sallie Mae, Inc.'s Motion to Dismiss Complaint as to Sallie Mae Inc. Only for Failure to State a Claim Upon Which Relief Can be Granted* (Doc. #79).

ECMC's alleged failure to adequately respond to Debtor's discovery requests.[7] (See Doc. #53). Both motions to compel were granted in part at a hearing held on August 25, 2011. (See Audio Recording of Hearing Held in Courtroom D, August 25, 2011 (11:46 - 11:47 AM), (11:52 AM - 12:41 PM); later memorialized in written Orders at Doc. #90, #92). At the hearing, the Court also continued the trial to December 6, 2012, reset the discovery deadline to November 7, 2011, and extended the deadline for filing amended or supplemental pleadings and/or exhibits though November 22, 2011.[8] (See Audio Recording of Hearing Held in Courtroom D, August 25, 2011 (11:46 - 11:47 AM); later memorialized in written Order at Doc. #86).

At the December 6, 2011 trial, both the Debtor and ECMC submitted exhibits that were previously submitted on the docket along with the pre-trial memoranda of both parties.[9] (See Doc. #46, #60, #70-74, #167). Also at trial, ECMC submitted certain of the Debtor's bank statements produced pursuant to this Court's Order granting *ECMC's Second Motion to Compel Response to Discovery and Request for Sanctions* (the "Bank Statements"). (See Doc. #139).

---

[7] The Debtor also requested identical relief against Sallie Mae, Inc. based on Sallie Mae Inc.'s alleged failure to respond to Debtor's discovery requests. (See Doc. #53). However, Sallie Mae, Inc. was ultimately dismissed as a party defendant in this action. See *supra*, note 6.

[8] The Debtor's *Motion for Default Judgment* and *Request for Entry of Default Judgment* against Sallie Mae, Inc. were also continued to the December 6, 2012 trial date. (See Doc. #88). However, once again, Sallie Mae, Inc. was ultimately dismissed as a party defendant in this action. See *supra*, note 6.

[9] The Debtor filed motions to strike the pre-trial memorandum and exhibits filed by ECMC, alleging that all documents were untimely filed. (See Doc. #75, #76). Contemporaneously with the issuance of this *Memorandum Opinion*, both the Debtor's *Motion to Strike ECMC's Trial Exhibits* (Doc. #75) and *Motion to Strike ECMC'S Pretrial Memorandum* (Doc. #76) shall be denied by way of separate Order as the deadline for filing amended or supplemental pleadings and/or exhibits was extended though November 22, 2011 by virtue of the Order entered September 8, 2011. (See Doc. #86).

The Debtor presented no additional evidence or testimony at the trial and, instead, rested on the submission of his trial exhibits. (See Audio Recording of Hearing Held in Courtroom D, December 6, 2012 (1:51- 1:58 PM)). Subsequently, the counsel for ECMC made an oral motion for a judgment as a matter of law.[10] (See id. at (1:57 - 1:59 PM)). The Court took the matter under advisement, delaying ruling on ECMC's oral motion for the purpose of creating a full record in the event that an appeal might be taken. (See id.) After ECMC presented its case, the Court requested post-trial briefing by the parties, which was timely submitted. The matter is now ripe for adjudication.

## II.

Section 528(a)(8) of the Bankruptcy Code does not permit an individual debtor to be discharged from any debt for educational loans "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."[11] 11 U.S.C. § 523(a)(8).

The United States Court of Appeals for the Third Circuit has adopted the test for "undue hardship" outlined in Brunner v. New York Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987). Pennsylvania Higher Education Assistance Agency v. Faish, 72 F.3d 298, 306 (3d Cir. 1995) cert. denied, 518 U.S. 1009 (1996).

Under the Brunner test, student loan debt is not dischargeable unless the debtor can establish that: "(1) based on current income and expenses, debtor cannot maintain a minimal standard of living for herself and her dependents if she has to repay the loan;

---

[10] ECMC's oral motion was styled as a "Motion for Directed Verdict". (See Audio Recording of Hearing Held in Courtroom D, December 6, 2012 (1:57 - 1:58 PM)). The Court has treated the motion as a motion for a judgment as a matter of law given that this case was heard by way of bench trial.

[11] The parties do not dispute that the debt at issue constitutes educational loan debt as described under 11 U.S.C. § 523(a)(8).

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) debtor has made a good faith effort to repay the loan." Shilling v. Sallie Mae Servicing Corp. (In re Shilling), 333 B.R. 716, 721 (Bankr. W.D. Pa. 2005) (citing Faish, 72 F.3d at 304-05).

Each of the three prongs must be satisfied individually before a discharge of the obligation can be granted. Faish, 72 F.3d at 306. Thus, if any one prong is not satisfied, the Court's inquiry will conclude without the entry of a discharge. Id. Furthermore, the Debtor bears the burden of proof with regard to every prong of the Brunner test by a preponderance of the evidence. Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 327 (3d Cir. 2001) (citing Faish, 72 F.3d at 306; Grogan v. Garner, 498 U.S. 279, 291, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991)).

In the instant matter, the Debtor has failed to meet his burden with regard to each prong of the Brunner test.

### A.

The first prong of the Brunner test requires the Debtor to demonstrate that he could not afford to maintain "a 'minimal' standard of living" if forced to repay his student loans. Faish, 72 F.3d At 304-05 (quoting Brunner, 831 F.2d at 396). The Debtor has not established a clear enough picture of his income and expenses to establish by a preponderance of the evidence that he would be incapable of maintaining a "minimal standard of living" if forced to repay the student loans in question. In fact, the evidence adduced at trial is such that the Debtor has failed to accurately account for all his income and expenses. As a result, the Debtor has failed to meet the first prong of the Brunner test.

On the Debtor's schedules I and J, he lists his combined average monthly income as $1,501.07 and his average monthly expenses as $2,047.90. (See Doc. #60, *Plaintiff's*

*Trial Exhibit 2*). While it appears as though the Debtor has a negative net monthly income, the remainder of the record shows that the Court cannot rely on the information in the Debtor's schedules. Indeed, the Court is not required to accept the Debtor's income and expenses listed on his schedules at face value, but rather has a duty to ensure that the income and expenses "reflect a true picture of the debtor's financial situation." See In re Goodman, 449 B.R. 287, 293 (Bankr. N.D. Ohio 2011) (quoting Mitchan v. U.S. Dep't of Educ. (In re Mitcham), 293 B.R. 138, 144 (Bankr. N.D. Ohio 2003)).

A simple review of the Debtor's income reveals inconsistencies. For example, the payment advices submitted by the Debtor show that he received total net monthly take home pay of $1,561.17 in December of 2010 and $1,567.44 in January of 2011. (See Doc. #72, *Defendant's Trial Exhibit 2*, pp. 23-28). These amounts exclude a bonus in the amount of $916.12 that the Debtor received on December 15, 2010. (See *Defendant's Trial Exhibit 21*, handed up at the Hearing Held in Courtroom D, December 6, 2012, p. 25). Additionally, the Debtor admits that the income figure in his Schedule I is not current, as he provided evidence of a wage garnishment in the amount of $486.00 per month for child support beginning in June of 2011. (See Doc. #60, *Plaintiff's Trial Exhibit 5*; see also Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:45 - 2:47 PM)). While the Debtor repeatedly asserted that his bi-monthly pay is approximately $540 following this garnishment (see Audio Recording of Hearing Held in Courtroom D, November 8, 2011 (10:50 - 10:51 AM); Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:46 - 2:47 PM)), he was unable to explain a subsequent increase in his monthly income of approximately $225.00 evidenced by his Bank Statements. (See id. at (2:47 - 2:48 PM); see also *Defendant's Trial Exhibit 21*, pp. 53, 55, 58, 60).

The Court is faced with a similar problem with regard to the Debtor's expenses. At the center of this issue is that fact that the schedules on which the Debtor relies are hopelessly out of date and have not been properly amended.[12] For instance, the Debtor lists $400.00 per month in rental expenses; however, at trial the Debtor explained that he moved in with his fiancée in October or November of 2011. (See id. at (2:48 - 2:50 PM)). While the Debtor insists that he is paying rent to his fiancée in the amount of $400.00 per month, he admitted that neither the method of payment nor the payment amounts were consistent. (See id.). Additionally, the Debtor lists payments for his college tuition in the amount of $413.00 per month as an expense on his Schedule J. (See *Plaintiff's Trial Exhibit 2*). However, the evidence does not support the Debtor's claim. For instance the Debtor admits, that he is longer attending classes and, therefore, no longer incurs this additional expense. (See Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:57 - 2:58 PM)). In addition, it appears from a review of the Bank Statements that the Debtor made monthly payments in the amount $212.50 in March and April of 2011, while the remaining balance of his tuition expenses were paid from another source. (Compare *Plaintiff's Trial Exhibit 10* with *Defendant's Trial Exhibit 21*, pp. 39, 45; see also Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:53 - 2:55 PM)).

There are several other inconsistencies in the Debtor's evidence and testimony, which prevent the Court from obtaining a clear picture of the Debtor's financial condition. By way of example, the Debtor insists on his Schedule B that as of the petition date he had a balance in his checking account of $0.00. (See *Plaintiff's Trial*

---

[12] The Debtor has a continuing duty to amend his schedules. See In re Lowery, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008) ("The duty to disclose is a continuing one and does not end with the filing of the bankruptcy petition."). See also 11 U.S.C. § 521 and Fed. R. Bankr. P. 1009(a).

*Exhibit 2*). However, a review of his Bank Statements show that the Debtor actually had a balance of $268.54 on the date he filed his bankruptcy petition (See *Defendant's Trial Exhibit 21*, p. 32) and a balance of $729.21 on the date he filed his Schedule B. (See *Defendant's Trial Exhibit 21*, p. 34).[13] In fact, a review of the Debtor's bank records show that at no point during the four month period prior to filing his bankruptcy petition did the Debtor have a zero balance or a negative balance in his bank account. (See *Defendant's Trial Exhibit 21*, pp. 7-32).

From a review of the existing record, it is completely unclear to the Court whether the Debtor's monthly expenses actually outweigh his monthly income following the child support garnishment.[14] This is largely because the Debtor readily admits that he and his fiancée share living expenses as well as associated costs.[15] (See e.g., Audio Recording of

---

[13] Each balance figure represents that balance listed in the Debtor's bank account following the posting of all transactions for the date listed.

[14] The Debtor has produced evidence of expenses that do not appear on his schedules as filed. For example, the Debtor produced an outstanding bill for dental services (see *Plaintiff's Trial Exhibit 9*), a phone bill in excess of his scheduled amount (see *Plaintiff's Trial Exhibit* 11) and implies that assistance from his fiancée may be limited because she is the primary caregiver for her nine year old child (see Doc. #197 p. 7 n.2). The Debtor also submitted evidence of continuing co-pays for counseling and dental treatment. (See *Plaintiff's Trial Exhibits* 8, 9). However, the Debtor appears to have "double-counted" his insurance expenses, deducting $145.57 per month from his pay for insurance on his Schedule I, and indicating $149.90 per month health insurance expenses on his Schedule J. (See *Plaintiff's Trial Exhibit 2*; see also Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:55 - 2:56 PM)). The Debtor also insists that he is paying back a loan from his boss in the amount of $4,500.00 at $200.00 per month; however, the Debtor was unsure when he began repaying this loan, and he was uncertain of the method of repayment. (See id. at (2:50 - 2:51 PM)).

[15] The Debtor admitted during the course of his testimony that his fiancee"has been lending [him] some money". (Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:49 - 2:51 PM)). Also, in a prior hearing on a discovery motion, in the course of disputing that ECMC should be provided with access to his bank account records, the Debtor admitted that his "fiancee helps [him] out a lot . . ." and went to explain: "I am completely broke. I make $543.00 every two weeks. I do have expenses, sometimes my money doesn't last that long and my fiancée will front me some money. And then, in the event I pay her back, she requests certain things from me. Therefore, an accurate account statement will not be made

(continued...)

Hearing Held in Courtroom D, December 6, 2011 (2:49 - 2:50 PM)). Without an accurate picture of the Debtor's financial situation, it cannot be determined whether the Debtor is capable of maintaining a "minimal standard of living" if he were forced to repay his student loan obligations. As a result, the Debtor has failed to meet what is clearly his burden of proof. See In re Newlin, No. 01-60983, 02-6015, 2003 WL 1944332, at *2 (Bankr. S.D. Ill. April 17, 2003) (denying debtor's complaint to determine dischargeability because of the debtor's failure to meet her burden of proof by a preponderance of the evidence).

As the Debtor has failed to satisfy the first prong of the Brunner test, the Court's inquiry could end here. See Flickinger-Luther v. ECMC (In re Flickinger-Luther), 462 B.R. 157, 163 (Bankr. W.D. Pa. 2012) (citing Fabrizio v. U.S. Dep't of Educ. Borrower Servs. Dep't Direct Loans (In re Fabrizio), 369 B.R. 238, 244 (Bankr. W.D. Pa. 2007)). However, to ensure a complete analysis this Court will evaluate whether the Debtor has met his burden with regard to the second and third prongs of the Brunner test.

### B.

Under the second prong of the Brunner test, the Debtor must prove that his purported inability to maintain a minimal standard of living if forced to repay his student loans will persist for "a significant portion of the loan repayment period." Faish, 72 F.3d at 305. The Third Circuit has described the second prong as a "demanding requirement," which mandates that the Debtor prove "a total incapacity . . . in the future to pay [his]

---

[15](...continued)
with my actual debit transactions." (Audio Recording of Hearing Held in Courtroom D, November 8, 2011 (10:50 - 10:51 AM)). Additionally, the Bank Statements that were ultimately submitted show several transfers between the Debtor's account, and an account which the Debtor testified he thought belonged to his fiancée. (See *Defendant's Trial Exhibit 21*, pp. 43, 47, 50; see also Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:30 - 2:32 PM).

debts for reasons not within [his] control." Brightful, 267 F.3d at 328 (quoting Faish, 72 F.3d at 307). A finding of undue hardship under the second prong requires "unique or extraordinary circumstances", which make it unlikely that the debtor would ever be capable of repaying his obligation. Id. (quoting In re Ballard, 60 B.R. 673, 675 (Bankr. W.D. Va. 1986)).

The Debtor alleges that his disease of alcoholism may prevent him from satisfying his student loan obligations. (Doc. #195, *Brief in Support of Plaintiff's Request for Discharge of his Student Loans*, p.6). Based on the record before it, this Court finds that the Debtor's alcoholism does not constitute a "special circumstance" that would result in the Debtor satisfying the second prong of the Brunner test.

The Debtor is currently employed and testified that he has been sober for three or four years. (See Audio Recording of Hearing Held in Courtroom D, December 6, 2012 (2:20 - 2:22 PM)). The Debtor testified that he had a "short relapse" in 2007, but had been sober for five years prior to his relapse. (See id.) To his credit, the Debtor also testified that he has been attending counseling sessions and Alcoholics Anonymous meetings to manage his alcoholism. (See id.) In addition, the Debtor testified that he is taking all of the medications prescribed to him to assist in the treatment of his alcoholism. (See id.)

While the Court is sensitive to the fact that the Debtor believes that he will have to endure a life long struggle with alcoholism, it appears that the Debtor's struggle is not currently impacting his ability to work and will not impact his earning potential in the foreseeable future. This Court's decision is supported by case law which holds that the possibility of Debtor's relapse into addictive behavior is not sufficient to satisfy the second prong of the Brunner test once the Debtor has been successfully able to maintain

employment. See e.g., Roach v. United Student Aid Fund (In re Roach), 288 B.R. 437, 446 (Bankr. E.D. La. 2003) (citing In re Albert, 25 B.R. 98 (Bankr. N. D. Ohio 1982)). As such, the Debtor has not met his burden of proving how his disease of addiction would impair his ability to work. See Brightful, 267 F.3d at 330 (finding that the party seeking discharge based on a medical condition has the burden of proving how the condition impairs the party's ability to work).

Furthermore, at the time of trial, the Debtor was only thirty-four (34) years of age. (See Audio Recording of Hearing Held in Courtroom D, December 6, 2011 (2:56 - 2:57 PM)). The Debtor has also demonstrated that he is articulate and intelligent. This indicates, and the Debtor admits, that he has a substantial working life ahead of him. (See id.) In addition, the Debtor is currently employed full-time as a paralegal at a law firm. (See Case No. 11-20288, Doc. #86, Exhibit 2). The Debtor's full-time employment status was obtained pursuant to a promotion in November of 2010. (See id.). As a result of his employment, the Debtor enjoys an annual salary, health benefits, and an annual holiday bonus. (See id.; see also Audio Recording of Hearing Held in Courtroom D, December 6, 2012 (2:37 - 2:39 PM)). His employment at the firm appears to be stable, and the Debtor's employer considers him an "asset" to the firm. (See id.).

In sum, the Debtor's ability to work as evidenced by his current employment in combination with his successful management of his addiction, convince this Court this Debtor is currently able, and will likely remain able, to make some continuing payments toward his student loan obligations. See Richardson v. N.C. State Educ. Assistance Auth. (In re Richardson), Bankr No. 07-01504-5-ATS, Adv. No. S-07-00096-5-AP, 2008 WL 3911075, at *3 (Bankr. E.D.N.C. Aug. 14, 2008). Therefore, the Debtor has failed to meet his burden of proof as to the second prong of the Brunner test.

C.

Finally, the Debtor must prove that he has "made a good faith effort" to repay his student loan obligations. Faish, 72 F.3d at 305 (citing Brunner, 831 F.2d at 396). This Court has previously found that in analyzing the third prong of the Brunner test, courts must consider "(1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy." In re Flickinger-Luther, 462 B.R. at 163 (quoting Pelliccia v. United States Dep't of Educ., 67 Fed. Appx. 88, 90-91 (3d Cir. 2003) (not precedential)).

With regard to the first inquiry, it appears to the Court that the Debtor lives a modest lifestyle, void of any substantial unnecessary expenses. Unfortunately for the Debtor, he has failed to provide either a complete and accurate account of his bank statements or a full explanation of the expense sharing arrangement with his fiancée, leaving the Court with a murky picture of his household income, expenses and spending habits.

Therefore, the Court's analysis as to whether the Debtor satisfies the third prong of the Brunner test must rest largely on the Debtor's attempts to repay and/or restructure his loan obligations prior to filing for bankruptcy relief. In evaluating the record with regard to this question it is readily apparent to the Court that the Debtor has failed to meet his burden of proof with regard to the "good faith" prong.

This Court has previously found that a debtor's lack of participation in a loan repayment program, such as the William D. Ford Income Contingent Repayment Plan, is not in and of itself dispositive as to the "good faith" prong of the Brunner test. See In re Flickinger-Luther, 462 B.R. at 164 (citations omitted). However, whether a debtor has made any attempt to restructure his student loan obligations remains a persuasive

factor. See id. at 163-64. In the instant matter, the Debtor admits that he has never made any formal attempt to seek an adjustment, deferment or forbearance, or to consolidate his student loan obligations. (See *Defendant's Trial Exhibit 3*, Answer to Interrogatory #16; see also Audio Recording of Hearing Held in Courtroom D, December 6, 2011, (2:14 - 2:15 PM)). While the Debtor complains that his loans should never have been put into default status because he was in a rehabilitation program, he never took formal steps either before of after the default to correct his situation aside from seeking to have all of his debts discharged through his bankruptcy case.

Further, the Debtor admits that he has never made a payment on his student loan obligations. (See *Defendant's Trial Exhibit 3*, Answer to Interrogatory #16). This admission is supported by records produced by ECMC that show absolutely no payment history for the Debtor. (See *Defendant's Trial Exhibit 16*). In addition, the Debtor is attempting to discharge student loans very early in his working life, and only four years after acquiring his most recent student loan obligation. (See id.).

From a review of the record, the Debtor has not demonstrated by the preponderance of the evidence a good faith effort to repay his student loan obligations. Therefore, the Debtor has failed to meet his burden with regard to the third prong of the Brunner test.

*[Remainder of Page Intentionally Left Blank]*

**III.**

The Debtor has failed to satisfy his burden of proof with regard to each prong of the Brunner test. Therefore, the Debtor's request for a discharge of his student loan debt based on "undue hardship" must be denied, and judgment will be entered in favor of defendant ECMC and against the Debtor. An order consistent with this *Memorandum Opinion* shall be issued by the Court.

**Date:** March 13, 2012

_____
JEFFERY A. DELLER
U.S. Bankruptcy Judge

**CASE ADMINISTRATOR TO SERVE:**
Gerald S. Lepre, Jr., *pro se*
John P. Neblett, Esq.
Rosemary C. Crawford, Esq.
Office of the U.S. Trustee

**FILED**

MAR 1 3 2012

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA